[Cite as *State v. Hill*, 2011-Ohio-5810.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                     :

    Plaintiff-Appellee                 :          C.A. CASE NO.     24410

v.                                                :          T.C. NO.     2010 CR 900

KRISTAL N. HILL                                   :          (Criminal      appeal
              from

                                    Common Pleas Court)

    Defendant-Appellant                :

                                      :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___10th___ day of ___November___, 2011.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

LORI R. CICERO, Atty. Reg. No. 0079508, 500 East Fifth Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Kristal N. Hill appeals her conviction and sentence for one count of endangering children (serious physical harm), in violation of R.C. 2919.22(B)(1), a felony of the second degree, and one count of endangering children (parent-serious harm), in violation of R.C. 2919.22(A), a felony of the third degree. Hill filed a timely notice of appeal with this Court on December 29, 2010.

I

{¶ 2} On March 2, 2010, Hill observed three little red bumps on her four-year old daughter's left upper arm while giving the child a bath. Hill noticed that her daughter, E.T., was picking at them. Hill suspected that the bumps on E.T.'s arm were ringworm, and she began applying an antifungal cream in an effort to dry out the affected area. Hill applied the antifungal cream to E.T.'s arm for several days.

{¶ 3} Once she ran out of antifungal cream, Hill began treating the affected area on E.T.'s arm with bleach. After applying the bleach to E.T.'s arm with a Q-tip, Hill testified that she would then apply cortisone gel in order to cool the affected area. Hill applied bleach to E.T.'s arm on approximately

three occasions. Hill testified that she believed that bleach would cure the ringworm by drying it out, and the cortisone gel would stop E.T. from scratching the affected area.

{¶ 4} Hill testified that on March 18, 2010, while she was giving E.T. a bath, she noticed that the ringworm was not healing properly and appeared to be growing in size. Hill brought E.T. into the kitchen and explained that she was going to cure the ringworm with an "old home remedy that was used on Mommy." Hill proceeded to apply bleach to the affected area on E.T.'s upper arm. Hill testified that she then warmed a spoon over the stove and tapped the hot spoon around the edge of the ringworm while her other two daughters blew on E.T.'s arm. Hill applied cortisone gel to the affected area on E.T.'s arm and put her to bed.

{¶ 5} On Saturday, March 20, 2010, E.T. was at the home of her father, Vernon Thomas, as part of his bi-weekly visitation. Thomas decided to give E.T. a bath during which he noticed that she had a severe burn on her left upper arm. Thomas immediately took E.T. to Children's Medical Center in order to have the burn treated. Upon arriving at the hospital, E.T. spoke with Pamela Byer, a medical social worker whose duty it was to obtain E.T.'s social history in order to assist the medical staff in diagnosing and treating the child. Byer

testified that E.T. stated that her mother placed a hot spoon on the stove and then placed the spoon on her arm. Byer also testified that E.T. also stated that her mother told her not to tell anyone. A subsequent medical examination established that E.T. had suffered a second degree burn to her left upper arm. Additionally, the burn was at least two days old and had been left untreated. E.T. suffered permanent scarring on her arm from the burn.

{¶ 6} On March 31, 2010, Hill was indicted for one count of endangering children, in violation of R.C. 2919.22(B)(1), a felony of the second degree. Approximately two months later on May 25, 2010, Hill was indicted for an additional count of endangering children (parent-serious harm), in violation of R.C. 2919.22(A), a felony of the third degree. The case proceeded to jury trial on July 23, 2010, after which the trial court declared a mistrial.

{¶ 7} A second jury trial was held on November 19, 2010. Prior to the second trial, the trial court held that E.T. was incompetent to testify. Ultimately, Hill was found guilty of endangering children (serious physical harm), and one count of endangering children (parent-serious harm). On December 20, 2010, Hill was sentenced to a term of five years of community control.

{¶ 8} It is from this judgment that Hill now appeals.

## II

{¶ 9} Hill's first assignment of error is as follows:

{¶ 10} "THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN SUSTAINING THE PROSECUTION[']S OBJECTION TO DEFENSE COUNSEL'S LINE OF QUESTIONING REGARDING HOME REMEDIES DURING VOIR DIRE."

{¶ 11} In her first assignment, Hill contends that the trial court abused its discretion when it sustained the State's objection to defense counsel's specific line of questioning during voir dire regarding the jury thoughts and feelings towards the use of bleach and a heated spoon as a "home remedy" for the treatment of ringworm.

{¶ 12} In *State v. Davis*, 116 Ohio St.3d 404, 409-410, 2008-Ohio-2, the Ohio Supreme Court recently stated as follows:

{¶ 13} "'The manner in which voir dire is to be conducted lies within the sound discretion of the trial judge.' *State v. Lorraine* (1993), 66 Ohio St.3d 414, 418. A trial court has 'great latitude in deciding what questions should be asked on voir dire.' *State v. Wilson* (1996), 74 Ohio St.3d 381, 386. Absent a clear abuse of discretion, prejudicial error cannot be assigned to the examination of the venire. *State v. Jackson*, 107 Ohio St.3d 53,

2005-Ohio-5981, ¶ 28."

{¶ 14} "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 15} A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

{¶ 16} The record establishes that Hill's counsel was permitted to ask the prospective jurors whether they or their children ever had ringworm. Defense counsel was also permitted to ask the jurors if they had ever "used a home remedy to cure a skin rash or anything – or any kind of skin disorder?" It was not until defense counsel began specifically questioning the jury regarding whether any of them had used bleach to treat skin ailments that the State objected.

{¶ 17} The State argued that by inquiring into the jurors' feelings

regarding the use of bleach as a home remedy, defense counsel was attempting "to prejudge the venire's reaction to Hill's anticipated defense." "The purpose of voir dire should be limited to inquiries aimed at determining the prospective jurors' qualifications to serve." *State v. Patterson*, 188 Ohio App.3d 292, 306, 2010-Ohio-2012.

{¶ 18} Upon review, we find that defense counsel was not prevented from gauging prospective jurors' general views with respect to the use of home remedies. The permitted line of questioning provided a meaningful opportunity for defense counsel to gain insight into the venire's general knowledge and bias, if any, towards the use of home remedies. Accordingly, the trial court acted within its discretion by precluding defense counsel from asking questions regarding case-specific details, namely whether any of the jury used bleach as a home remedy to treat skin ailments. Contrary to Hill's assertions, further questions regarding bleach and its use as a home remedy were unnecessary to a determination as to whether the jury could be fair and impartial in evaluating the potential evidence to be adduced during trial. Accordingly, the record does not support Hill's claim that the trial court unreasonably restricted defense counsel's voir dire of the prospective jurors.

{¶ 19} Hill's first assignment of error is overruled.

III

{¶ 20} Hill's second assignment of error is as follows:

{¶ 21} "THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED WHEN IT ADMITTED HEARSAY STATEMENTS OF THE CHILD, WHICH VIOLATED APPELLANT'S RIGHTS UNDER THE SIXTH AMENDMENT AND THE FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION."

{¶ 22} In her second assignment, Hill argues that the trial court erred when it allowed Pamela Byer to testify regarding statements made by E.T. to Byer after the child was brought to the hospital for treatment. Specifically, Hill asserts that Byer's primary role when she interviewed E.T. was to investigate alleged abuse. As a result, Hill argues that any or all of E.T.'s statements offered by Byer at trial were inadmissible hearsay and violated the Confrontation Clause of the Sixth Amendment.

{¶ 23} "Not all hearsay implicates the Sixth Amendment Confrontation Clause, which establishes that testimonial statements of witnesses who are absent from trial are admissible only where the witness is unavailable and where the defendant has had a prior opportunity to cross-examine the witness.

*Crawford v. Washington* (2004), 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177. 'It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.' *Davis v. Washington* (2006), 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224. However, the United States Supreme Court specifically avoided any comprehensive definition of what constitutes a 'testimonial' statement. *Crawford,* at 68." *State v. Matthews*, 189 Ohio App.3d 446, 454-455, 2010-Ohio-4153.

{¶ 24} The testimony of Byer who interviewed E.T. at Children's Medical Center was admitted pursuant to Evid.R. 803, which states:

{¶ 25} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

{¶ 26} "(4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

{¶ 27} "Statements made to medical personnel for purposes of diagnosis or treatment are not inadmissible under *Crawford* because they are not even

remotely related to the evils that the Confrontation Clause was designed to avoid." *State v. Muttart,* 116 Ohio St.3d 5, 2007-Ohio-5267, ¶63, citations omitted. See, also, *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5428, ¶25. Statements of this kind are not testimonial in nature. Instead, they fall within a well-defined exception to the hearsay rule, that is statements made for the purpose of medical diagnosis or treatment. Evid.R. 803(4). The exception allows the admission of statements made not only to licensed physicians, but also to psychologists and social workers, *State v. Sheppard*, 164 Ohio App.3d 372, 2005-Ohio-6065, *State v. Edinger*, Franklin App. No. 05AP-31, 2006-Ohio-1527, so long as the function of the person to whom the statement is made was diagnosis or treatment. *State v. Chappell* (1994), 97 Ohio App.3d 515, 531. "A reviewing court will not reverse the trial court's admission of evidence absent an abuse of discretion." *State v. Bellomy*, Montgomery App. No.21452, 2006-Ohio-7087.

{¶ 28} At trial, Byer testified that she is a medical social worker employed by Children's Medical Center to consult with children and families to assess situations of possible neglect or abuse before the children are seen by a physician. Byer further testified that she has a master's degree in social work and is licensed in Ohio as an independent social worker supervisor. Byer's

primary goal when interviewing children at the hospital is to obtain information that will aid medical personnel such as physicians and nurses to determine the best course of treatment for the child.

{¶ 29} Regarding the statements made to her by E.T., Byer testified as follows:

{¶ 30} "The State: Okay. And can you tell the jury how you began your meeting with [E.T.] on the 20th of March, 2010?

{¶ 31} "Byer: When I met with [E.T.], just introduced myself and said – I try to put a child at ease and be calm. And she was fine. She was alert. And I asked her fairly quickly, 'Just tell me what happened. Why are you here at the hospital?

{¶ 32} "***

{¶ 33} "Q: And what did [E.T.] tell you at that time?

{¶ 34} "Byer: [E.T.] told me that [Hill] had placed a spoon in the stove and then placed it on her arm and told her not to tell anyone.

{¶ 35} "***

{¶ 36} "Q: Okay, not to tell anyone. When [E.T.] was telling you this, did her demeanor change or did she seem embarrassed or reluctant at all?

{¶ 37} "A: I did notice a change when she was telling me about the burn.

She had a worried look on her face and she added the statement after she told me that initial one that her mom placed the spoon on the stove and on her arm because she was hit in daycare."

{¶ 38} In *Muttart,* the defendant was convicted of raping a child under 13 years of age, and the Supreme Court of Ohio determined that the trial court did not abuse its discretion in admitting the victim's out of court statements to medical personnel pursuant to Evid.R. 803(4). 116 Ohio St.3d 5, 2007-Ohio-5267. The statements contained the perpetrator's identity. The *Muttart* court further determined that the victim's statements were not testimonial in nature and did not implicate the defendant's Sixth Amendment right of confrontation. In the course of its analysis, the Court determined that the "salient inquiry is * * * whether [the victim's] statements were made for purposes of diagnosis and treatment rather than for some other purpose." Id., ¶ 47.

{¶ 39} The Court further went on to note that the trial court "retains the discretion to admit the testimony after considering the circumstances surrounding the child victim's statements." Id., ¶ 48. The Court determined, "[a]t a minimum * * * a nonexhaustive list of considerations includes (1) whether the child was questioned in a leading or suggestive manner, (citations

omitted) (2) whether there is a motive to fabricate, such as a pending legal proceeding such as a 'bitter custody battle,' (citations omitted) and (3) whether the child understood the need to tell the physician the truth, (citations omitted). In addition, the court may be guided by the age of the child making the statements, which might suggest the absence or presence of an ability to fabricate, and the consistency of the declarations. (Citation omitted). In addition, the court should be aware of the manner in which a physician or other medical provider elicited or pursued a disclosure of abuse by a child victim, as shown by evidence of the proper protocol for interviewing children alleging sexual abuse." Id., ¶ 49.

{¶ 40} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, the Ohio Supreme Court recently considered the admissibility of statements given during interviews at child advocacy centers. The *Arnold* court noted that these types of interviews seek to elicit two types of statements: to wit: statements for the purposes of medical diagnosis and treatment and forensic statements. Id. The *Arnold* court focused on the admissibility of these statements under the Confrontation Clause, rather than Evid. R. 803(4). Id.

{¶ 41} In *Arnold*, the court held that statements given during these interviews for the purposes of medical diagnosis and treatment were

non-testimonial in nature and were admissible in court. Id. Conversely, statements elicited for forensic purposes were testimonial and were therefore, inadmissible pursuant to the Confrontation Clause. Id. Interestingly, the *Arnold* court noted that most of these interviews contain both types of statements, but only the non-testimonial statements are admissible in court. Id.

{¶ 42} Upon review, we conclude that the trial court did not abuse its discretion by permitting Byer to testify regarding E.T.'s statements pursuant to Evid. R. 803(4). E.T.'s statements to Byer were made for purposes of medical diagnosis and treatment. There is no suggestion herein that E.T. was not truthful. There is no suggestion of a motive for fabrication on E.T.'s part. E.T. had injuries consistent with her recitation of events. Byer made clear that it is her practice to ask non-leading and non-suggestive questions in the course of an interview of a child suspected of being abused or neglected, and she did so with E.T. The interview lasted approximately ten minutes, and the questions asked by Byer, as well as the statements elicited from E.T., were focused on the nature and cause of the burn on her left arm. Byer was responsible for a medical and psychological evaluation of E.T. Accordingly, we conclude that the trial court did not abuse its discretion in determining that

E.T.'s statements were made for medical diagnosis and treatment purposes.

{¶ 43} Regarding Hill's suggestion that his Sixth Amendment right to confrontation was violated, *Muttart* held, "Statements made to medical personnel for purposes of diagnosis or treatment are not inadmissible under *Crawford*, because they are not even remotely related to the evils that the Confrontation Clause was designed to avoid." Id., ¶ 46. Accordingly, Hill's claim pursuant to *Crawford* fails, since "we have no concern that the statements at issue were testimonial in nature. The statements made by [E.T.] were not made in the context of in-court testimony or its equivalent. There is no suggestion that they were elicited as part of the police investigation or in a sworn statement with intention of preserving the statement for trial or that they were a pretext or facade for state action." Id., ¶ 61. Thus, E.T.'s statements were non-testimonial in nature, and therefore, admissible pursuant to *Arnold*.

{¶ 44} Hill's second assignment of error is overruled.

IV

{¶ 45} Hill's third assignment of error is as follows:

{¶ 46} "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT THE CHILD WOULD NOT TESTIFY AT TRIAL AS SHE WAS DEEMED INCOMPETENT."

{¶ 47} In her third assignment, Hill contends that the trial court erred when it refused to instruct the jury that E.T. did not testify during trial because she was found to be incompetent.

{¶ 48} A trial court's decision to give or refuse to give jury instructions will not be disturbed on appeal unless the record affirmatively demonstrates an abuse of discretion on the facts and circumstances of the particular case. *State v. Wolons* (1989), 44 Ohio St.3d 64, 68. "[A] trial court must fully and completely give the jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen* (1990), 50 Ohio St.3d 206, ¶ 2 of the syllabus. "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Williford* (1990), 49 Ohio St.3d 247, 251, citations omitted.

{¶ 49} Initially, we note that Hill has not included a citation to any relevant legal authority in support of her argument that the trial court erred by refusing to instruct the jury that E.T. had been found incompetent to testify during trial. Additionally, a blanket pronouncement that E.T. was previously found "incompetent to testify", without further explanation, would only serve to mislead and confuse the jury regarding the meaning of the term "incompetent."

More importantly, had such an instruction been given, the jury could have impermissibly concluded that the trial court, by declaring E.T. "incompetent," found her statements implausible, and by implication, believed that her statements to Byer were inherently unreliable.

{¶ 50} E.T.'s statements to Byer were admissible under the hearsay exception in Evid. R. 803(4), as statements for the purposes of medical diagnosis or treatment. Under the circumstances presented in the instant case, an instruction regarding E.T.'s incompetency would have been totally irrelevant. *State v. McCollum* (April 14, 1989), Sandusky App. No. S-88-15. More importantly, any probative value E.T.'s incompetence would have had on the proceedings was substantially outweighed by the potential to mislead and confuse the jury. Accordingly, the trial court did not abuse its discretion when it denied Hill's request for a jury instruction that E.T. was incompetent to testify at trial.

{¶ 51} Hill's third assignment of error is overruled.

V

{¶ 52} Hill's fourth and final assignment of error is as follows:

{¶ 53} "THE JURY VERDICT SHOULD BE REVERSED BECAUSE THERE IS INSUFFICIENT EVIDENCE TO WARRANT A CONVICTION,

AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 54} In her final assignment, Hill argues that the evidence adduced during trial was insufficient to sustain her convictions. Alternatively, Hill contends that the greater weight of the evidence did not support the verdict rendered by the jury. Specifically, Hill asserts that she did not act "recklessly" when she put bleach on E.T.'s arm and burned it with a hot spoon. She also asserts that E.T. did not suffer serious physical harm.

{¶ 55} Hill was convicted of two counts of endangering children. Count I was for violating R.C. 2919.22(B)(1), which provides that no person shall recklessly abuse a child under eighteen years of age, where such abuse results in serious physical harm to the child. Count II was for violating R.C. 2919.22(A), which provides that no person, being the parent of a child under eighteen years of age, shall recklessly create a substantial risk to the health or safety of the child, by violating a duty of care that results in serious physical harm to the child.

{¶ 56} "Recklessly" is defined under R.C. § 2901.22(C) as follows:

{¶ 57} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely

to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶ 58} "Serious physical harm" is defined in pertinent part:

{¶ 59} "(d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement." R.C. 2901.01(A)(5)(d).

{¶ 60} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of

justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. (Internal citations omitted).

{¶ 61} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288.

{¶ 62} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

{¶ 63} Initially, Hill asserts that "when error is removed[,] there is

insufficient evidence to sustain [Hill]'s conviction." We have found no errors to be present. Additionally, the evidence adduced by the State established that Hill poured bleach on E.T.'s arm and then burned her arm with a hot spoon. It is generally accepted that bleach and a hot spoon can burn an individual's skin. Hill's entire defense was based on her belief that her actions were reasonable. In fact, Hill testified that she believed the use of bleach and a hot spoon on her daughter's arm was a suitable and accepted home remedy for treating ringworm.

{¶ 64} The State, to the contrary, argued throughout the trial that Hill disregarded a known risk when she applied bleach and a hot spoon to E.T.'s arm. It is undisputed that Hill's "home remedy" resulted in a second degree burn on E.T.'s arm. Thus, the jury had before it evidence which established that Hill acted recklessly.

{¶ 65} The evidence also established that E.T. suffered a permanent burn scar as a result of Hill's actions. "Actions resulting in permanent disfigurement do not require the State to show that the injury is substantial." *State v. McGuire* (December 27, 1989), Montgomery App. No. 11443. Where the victim suffered scarring on his face and arm, we held that it was not unreasonable to conclude that he suffered some permanent disfigurement. Id.

The evidence adduced was sufficient to establish that E.T. suffered serious physical harm from Hill's "home remedy." Thus, a review of the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Hill's conviction for two counts of endangering children.

{¶ 66} Lastly, Hill's conviction is also not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. Most notably, Hill presented evidence in the form of her own testimony, wherein she simply maintained that she believed that the use of bleach and hot spoon to cure ringworm was reasonable. The jury did not lose its way simply because it chose to believe that Hill acted recklessly and caused serious injury to E.T. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 67} Hill's fourth and final assignment of error is overruled.

## VI

{¶ 68} All of Hill's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J., concurs.

FROELICH, J., concurring:

{¶ 69} I agree that the statements to the social worker were non-testimonial since the primary purpose of the general question was not to establish or prove past events potentially relevant to later criminal prosecution; such non-testimonial hearsay may be admissible subject to the rules of evidence, in this situation Evid.R. 803(4). But was the statement that her mom "told her not to tell anyone" made for the purpose of diagnosis and treatment?

{¶ 70} Although a close question, we must be careful in attempting "to apply to children evidentiary rules which were drafted with adults in mind." *Muttart*, supra, ¶48 (internal citations omitted). And even if it were error, since it was not a constitutional error, it was harmless. The test for determining whether the admission of erroneous evidence is harmless and non-constitutional error requires us to look at the whole record, leaving out the disputed evidence, and then decide whether there is other substantial evidence to support the guilty verdict. *State v. Watters*, Licking App. No. 2007-CA-00067, 2008-Ohio-4344, ¶22 citing *State v. Davis* (1975), 44 Ohio App.2d 335, 347: See, also, Crim.R. 52(A). Applying the considerations set out in *Muttart*, ¶49, the trial court did not err in permitting the child's complete response to be heard by the jury.

. . . . . . . . . .

Copies mailed to:

Andrew T. French
Lori R. Cicero
Hon. Timothy N. O'Connell